Jeremiah M. Hudson, ISB No. 8364
FISHER & HUDSON, PLLC
1109 W. Main St., Ste. 600
Boise, ID 83702
Telephone: (208) 345-7000
Facsimile: (208) 514-1900
jeremiah@fisherhudson.com
service@fisherhudson.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO ANTI-TRAFFICKING COALITION, an Idaho Non-Profit Organization, and JENNIFER ZIELINSKI, an individual; <br><br> Plaintiffs, <br> vs. <br><br> WES SOMERTON, in his official and individual capacity; JESSICA UHRIG, in her official and individual capacity; AMBER MOE, in her official and individual capacity; JENNIFER BEAZER, in her official and individual capacity; RACHEL KASCHMITTER, in her official and individual capacity; JONA JACOBSON, in her official and individual capacity; CLINT LEMIEUX, in his official and individual capacity; DANA WIEMILLER, in her official and individual capacity; and DOES I-X, <br><br> Defendants. | Case No.: 1:24-cv-00526 <br><br> **SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW the above-named Plaintiffs, by and through their counsel of record, and

hereby complains and alleges as follows:

**<u>INTRODUCTION</u>**

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 1

1.    In the Spring of 2024, an investigative publication, InvestigateWest, began investigating allegations against an Idaho anti-trafficking non-profit organization named Idaho Community Outreach Behavioral Services ("COBS'). After receiving a public records request from InvestigateWest, and being contacted by reporters, the Idaho Council on Domestic Violence and Victim Assistance ("ICDVVA"), the Idaho agency responsible for administering federal funding to COBS and other victim assistance organizations became concerned that, in addition to being critical of COBS, any forthcoming publications might portray ICDVVA in a negative light.

2.    After communicating with COBS representatives, ICDVVA representatives identified a number of organizations and agencies that the reporters had purportedly been in contact with. ICDVVA came to believe that the Executive Director of Idaho Anti-Trafficking Coalition ("IATC"), Jennifer Zielinski ("Ms. Zielinski") had provided negative information to the reporters—potentially disparaging ICDVVA. Ms. Zielinski did, in fact, provide information to InvestigateWest reporters, as IATC and Ms. Zielinski informed ICDVVA.

3.    In July of 2025, four articles were published by InvestigateWest—which were focused primarily on allegations from former COBS safe house residents/trafficking survivors and COBS employees that alleged various types of misconduct by COBS and its Executive Director, Paula Barthelmess ("Ms. Barthelmess"), including conflicts of interest, "manipulative tactics mirroring those of traffickers" to exploit sex-trafficking victims, and potential Medicaid fraud, among other things. One of the four articles expressed criticism over ICDVVA for its role in funding COBS despite complaints it had previously received from former COBS' trafficking victims, IATC's March 14, 2023 complaint describing survivor safety issues at COBS and Ms. Barthelmess' alleged conflicts of interest, and for COBS' failure to align with ICDVVA's standards and federal requirements for grant funding. The four articles published by

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 2

InvestigateWest in July of 2024 focused primarily on COBS, and they did not allege that ICDVVA engaged in any intentional misconduct or criminal activity. The articles' use of information provided by Ms. Zielinski were fairly limited, and included references to the following: **(A)** a 48-page complaint Ms. Zielinski had previously filed with ICDVVA "describing survivor safety issues at COBS and [Ms.] Barthelmess' alleged conflicts of interests" and that Ms. Zielinski believed that "nothing ever came of the complaint" because ICDVVA thought it was a "part of an ongoing rift between two anti-trafficking organizations"; **(B)** a complaint that Ms. Zielinski filed with the Idaho Attorney General's office against Nampa Family Justice Center and COBS for publicly disclosing personal information about trafficking victims at a public conference and because Nampa Family Justice Center had paid Barthelmess for her appearance at the conference; and **(C)** Ms. Zielinski's assessment of how COBS uses recently enacted Idaho laws in its approach toward trafficking victims.

4.      ICDVVA representatives were angry with InvestigateWest's articles, and with IATC and Ms. Zielinski for providing InvestigateWest information about COBS and ICDVVA. ICDVVA representatives had multiple meetings with COBS representatives to discuss the allegations set forth in the articles.

5.      Prior to the articles being published, IATC, along with COBS and Idaho's other victim assistance organizations, applied to ICDVVA for federal funding that was being administered by ICDVVA for fiscal year 2025 ("FY25"). ICDVVA assessed and scored IATC's application as they are required to do by ICDVVA's policies. On August 7, 2025, ICDVVA informed IATC that, based on IATC's application score, IATC had been awarded a grant for FY25.

6.      On August 12, 2024 an InvestigateWest reporter submitted another public records request to ICDVVA that specifically asked for internal ICDVVA communications regarding

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 3

COBS and InvestigateWest's previous articles. Representatives of ICDVVA believed that ICDVVA would be the target in any subsequent articles by InvestigateWest, and that ICDVVA would be portrayed negatively. ICDVVA responded to the public records request on September 5, 2024. On September 6, 2024, ICDVVA held a special meeting to discuss the allegations against COBS and to consider, among other things, whether to revoke IATC's FY25 grant because of complaints that IATC and Ms. Zielinski had previously reported about COBS and because of Ms. Zielinski's communications with InvestigateWest reporters. ICDVVA representatives argued that such complaints and communications were a sign that IATC and Ms. Zielinski were refusing to collaborate with other victims assistance organizations and that refusing to collaborate and the disruptions resulting from the InvestigateWest articles negatively impacted services to trafficking victims.

7.      On September 20, 2024, at an ICDVVA board meeting, ICDVVA voted to retroactively revoke IATC's FY25 grant prior to notifying IATC or providing IATC with an opportunity to be heard. A September 25, 2024 letter from ICDDVA to IATC stated that "after re-evaluating IATC's performance under the terms of their ICDVVA subaward agreement, the Council voted at their September 20, 2024 meeting not to renew the IATC grant award for FY25." The letter also stated that "[t]he Council expressed significant concerns about IATC's refusal to collaborate with a variety of community partners, the resulting disruption to victim services, and the inadequate management/administration of grant funds."

8.      ICDVVA revoked IATC's FY25 grant to retaliate against Ms. Zielinski for exercising her rights under the First Amendment of the United States Constitution, and it did so in violation of IATC's Fourteenth Amendment Due Process right to, among other things, a notice and hearing.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 4

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over the federal civil rights propounded herein pursuant to 28 U.S.C. §§ 1331 and 1343.

10.      The Court may grant declaratory and injunctive relief for constitutional violations pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure 57 and 65.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside in Idaho, and some of the Defendants are located in, and all incidents, events and occurrences giving rise to this action took place in, Ada County, Idaho.

**PARTIES**

12.      Plaintiff Idaho Anti-Trafficking Coalition ("IATC" or "Plaintiffs") is an Idaho state-wide non-profit organization that provides victims and survivors of human trafficking with access to community-based programs and safe, supportive services, and expanding public education and outreach efforts statewide to raise awareness of human trafficking among vulnerable and underserved populations. IATC offers services in three program areas: (A) Awareness: Community Outreach, Educational Training, and Advocacy; (B) Case Management: 24/7 Crisis and Resource Hotline, which includes statewide crisis calls/response, resources/information, crisis response, direct partner referrals, and safety planning; and (C) Direct Victim Assistance: case management, case planning, emergency and transitional housing assistance, victim advocacy and accompaniment, transportation and relocation assistance, medical, dental, and mental health care, and emergency food/clothing/essentials.

13.      Plaintiff Jennifer Zielinski ("Ms. Zielinski" or "Plaintiffs") is, at all relevant times, the Executive Director of IATC.

14.    Defendant Wes Somerton ("Chair Somerton") is the Chair of ICDVVA, and he is the council member representing Region I.

15.    Defendant Jessica Uhrig ("Vice Chair Uhrig") is the Vice-Chair of ICDVVA, and she is the council member representing Region II.

16.    Defendant Amber Moe ("Ms. Moe") is the ICDVVA council member representing Region III.

17.    Defendant Jennifer Beazer ("Ms. Beazer") is the ICDVVA council member representing Region IV.

18.    Defendant Rachel Kaschmitter ("Ms. Kaschmitter") is the ICDVVA council member representing Region V.

19.    Defendant Jona Jacobson ("Ms. Jacobson") is the ICDVVA council member representing Region VI.

20.    Defendant Clint Lemieux ("Mr. Lemieux") is the ICDVVA council member representing Region VII.

21.    Plaintiffs do not know the true names, but are informed and believe, and on that basis allege, that the Defendants sued herein as Does I through X are in some manner legally culpable for the damages suffered by the Plaintiffs.  On such information and belief, Plaintiffs allege that the list of Doe Defendants I-X includes officers, agents and employees of ICDVVA, the State of Idaho, and other businesses, organizations, or individuals involved in the decision to revoke IATC's FY25 grant.

## GENERAL ALLEGATIONS

22.    ICDVVA is a political subdivision and state agency of the State of Idaho that is authorized to administer federal Victims of Crime Act ("VOCA") funds and Family Violence

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 6

Prevention and Services Act ("FVPSA") funds (collectively "federal funding") to victim assistance organizations in Idaho. Decision-making authority for ICDVVA consists of council members from seven districts throughout the State of Idaho. More than half of IATC's funding consists of federal grants administered by ICDVVA.IATC has received federal funding since 2019, and it has provided 41,613 instances of direct victim services, including transportation, relocation, housing assistance, financial emergency funding, and crisis support to human-trafficking survivors.

23.    IATC is the only anti-human-trafficking and victim assistance organization in Idaho to run a statewide 24/7 crisis hotline that is managed by case managers, accessible through text message or phone call. IATC is the only state-wide victim assistance program recognized by the National Human Trafficking Hotline.

24.    IATC is the only statewide anti-human-trafficking and victim assistance organization to implement a community coordination of care initiative, and it has 75 statewide partnerships and a dozen national partnerships consisting of various organizations and government agencies.

25.    ICDVVA distributes federal funding as fiscal year grants to various victim assistance organizations in Idaho.

26.    As required by federal law, ICDVVA has established an application and grant approval process by which it determines which organizations will be awarded grants.

27.    ICDVVA has a "Grant Award Process" policy that pertains to "subrecipient solicitation, awarding, and distribution of federal funds in Idaho Administrative Code (IDAPA 16.05.04)."

28.    The Grant Award Process includes, among other things, several procedures, including ICDVVA issues an RFP for ICDVVA funding each year and posts it on its website.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 7

29.     As part of the Grant Award Process, when considering applications from organizations for grants, ICDVVA reviews and scores each application in accordance to an application score sheet provided by ICDVVA staff. ICDVVA has considers eight specific categories when scoring applications submitted by organizations, including, among others, services provided, staff and volunteers, funding and support, fiscal management, and clients served.

30.     ICDVVA maintains policies regarding the suspension or termination of funding.  It states that "[a]lthough the situation is rare, there are times when a program no longer meets the standards set forth by the Council or federal or state funding sources, and is not in compliance with the program, contractual or fiscal requirements, or state and federal laws. ICDVVA will act pursuant to the Idaho Administrative Procedures Act, 16, Title 05, Chapter 04."

31.     ICDVVA's suspension or termination of funding policy also states that initiation of the complaint process and the discretion of ICDVVA will be in accord with ICDVVA standards, state and federal funding source guidelines, and state and federal law. The suspension or termination of funding policy sets forth a number of procedural requirements that must be taken prior to the suspension or termination of funding, including providing the organization who is at risk of having their funding suspended with notice, an opportunity to respond, negotiations to attempt to remedy the complaint, among other requirements.

## ALLEGATIONS AGAINST COBS

32.     COBS is an Idaho non-profit who receives federal funding administered by ICDVVA and the Nampa Family Justice Center. COBS' founder and Executive Director is Paula Barthelmess ("Ms. Barthelmess").

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 8

33.    Since around January of 2020, IATC employees and board members have expressed concerns about COBS and Ms. Barthelmess pertaining to, among other things, requiring victims to do unpaid work for COBS, publicly disclosing confidential information about trafficking victims, potentially fraudulent billing practices, and conflicts of interest between COBS and ACTS—a mental health agency owned by Ms. Barthelmess' son that also employs Ms. Barthelmess, and for whom COBS refers victims/residents for counseling.

34.    Since around January of 2020, IATC's Executive Director, Ms. Zielinski and other IATC employees made several complaints and reports to ICDVVA and other state and government agencies pertaining their above-mentioned concerns about COBS, including, among others, filing a formal complaint on March 14, 2023.

35.    ICDVVA took no formal action to investigate IATC's allegations against COBS pertaining to IATC's March 14, 2023 complaint, or any other report that IATC employees had provided to ICDVVA.

36.    In July of 2024, InvestigateWest, an independent, nonprofit investigative publication, began publishing a series of articles that primarily alleged that COBS appeared to be engaging in potential Medicaid fraud, conflicts of interest by, among other things, using VOCA funding to pay for counseling and case management for trafficking victims to a company owned by her son, and using "manipulative tactics mirroring those of traffickers" to exploit sex-trafficking victims who had been released by courts into the custody of COBS after serving time in jail for crimes related to their status as sex-trafficking victims.

37.    While three of the four articles that InvestigateWest published in July of 2024 primarily focused on COBS, one article was critical of ICDVVA for its role in funding COBS despite complaints it had received from former COBS' trafficking victims, IATC's March 14,

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 9

2023 complaint describing survivor safety issues at COBS and Barthelmess' alleged conflicts of interest, and for COBS' failure to align with ICDVVA's standards and federal requirements for grant funding.

38.    In the four different articles published by InvestigateWest in July of 2024, two of the InvestigateWest articles refer to IATC, or its Executive Director, Ms. Zielinski, by citing:

a.    a 48-page complaint Ms. Zielinski had previously filed with ICDVVA "describing survivor safety issues at COBS and Barthelmess' [COBS' EXECUTIVE DIRECTOR,] alleged conflicts of interests" and that Ms. Zielinski believed that "nothing ever came of the complaint" because ICDVVA thought it was a "part of an ongoing rift between two anti-trafficking organizations";

b.    a complaint that Ms. Zielinski filed with the Idaho Attorney General's office against Nampa Family Justice Center and COBS for publicly disclosing confidential personal information about trafficking victims at a public conference and because Nampa Family Justice Center had paid Barthelmess for her appearance at the conference; and

c.    Ms. Zielinski's assessment of how COBS uses recently enacted Idaho laws in its approach toward trafficking victims.

39.    The InvestigateWest authors asserted that they interviewed "several dozen people including former safe house residents and employees; current and former board members, police and service providers who have worked with COBS; whistleblower attorneys, federal investigators, and national experts on issues such as trafficking, Medicaid billing, and nonprofit governance. To verify claims about the conditions of the safe houses, InvestigateWest reviewed

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 10

formal complaints and inspection records, Medicaid billing records, government <u>contracts</u> and transactions with COBS, court records, and social media accounts."

**ICDVVA'S REACTION TO INVESTIGATEWEST INVESTIGATION AND ARTICLES**

40.     In <u>April of 2024</u>, ICDVVA Director Wiemiller, became aware that InvestigateWest was investigating and intended to publish an article on human trafficking.

41.     On or around <u>May 7, 2024</u>, ICDVVA Director Wiemiller emailed the Deputy Chief of Staff and Communications Director for Idaho's Governor, Sara Stover and Emily Callahan, to inform them that ICDVVA had been working with the Attorney General's office on a public records request from InvestigateWest, and that she had learned that a reporter had asked an ICDVVA-funded organization "about the timing of ICDVVA grant reimbursements, our grievance policy, and communication with funded programs."

42.     Director Wiemiller believed that COBS was likely to be the subject of any InvestigateWest publication.

43.     ICDVVA Director Wiemiller believed that InvestigateWest intended to portray ICDVVA negatively in any forthcoming publication.

44.     On <u>June 21, 2024</u>, Director Wiemiller forwarded an email to Chair Somerton and Vice Chair Uhrig with the Subject "FW: List of targeted agencies for article." In the Email, Director Wiemiller wrote, "As a follow-up to our conversation, here's the list of agencies that have been contacted by InvestigateWest in addition to COBS and ICDVVA" and listed ten organizations, including victim assistance organizations, a medical company, police departments, and a prosecutor's office, among others. Director Wiemiller said that she had received names of eight of the ten listed organizations from "Paula [Barthelmess]/COBS when we met last month."

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 11

45.     Around May or June of 2024, ICDVVA Director Wiemiller and council members, began suspecting that Ms. Zielinski had been providing negative information to InvestigateWest about ICDVVA.

46.     On June 18, 2024, ICDVVA Vice Chair Uhrig sent an email to IATC's Board Chair stating, "we have become aware of some issues with Idaho's trafficking organizations and potential impacts on victim services and partner programs," and she asked for a meeting between Vice Chair Uhrig, Chair Somerton, and the IATC board members the following week.

47.     On or around June 25, 2024, ICDVVA Chair Somerton and Vice Chair Uhrig spoke with IATC board members about Ms. Zielinski's involvement with the InvestigateWest reporter. Chair Somerton reported that he requested that the IATC board members to ask Ms. Zielinski to stop "bad-mouthing" ICDVVA to the InvestigateWest reporter.

48.     On July 1, 2024, IATC's Board Chair emailed ICDVVA Chair Somerton and Vice Chair Uhrig to follow up on their meeting the prior week. Among other things, IATC's Board Chair explained:

> As far as Investigate West goes, Jennifer [Zielinski] explained that she did not know who all the reporters were interviewing, but she was also interviewed. It is her understanding that the journalists are focused on overall systems pertaining to victims of human trafficking and their human and civil rights. She was also aware of the fact that the journalists had made a public records request based on at least two victims who had contacted them. There is a possibility that the formal complaint that we filed as a board and staff that I mentioned could have been part of that public records request, which is where specific information that you mentioned regarding ICDVVA may have come from. Outside of that, she was no more aware of their full angle or who they contacted or interviewed.

49.     On July 2, 2024, Vice Chair Uhrig forwarded the email IATC's Board Chair to Director Wiemiller, and stated "Below is [the IATC's Board Chair's] response. If we have some

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 12

factual information contrary to what Jennifer [Zielinski] reported to them, it's probably a good time to pass it along. What are all of your thoughts?" This email was later forwarded to ICDVVA Program Administration Manager, Amy Duque.

50.     In response to Vice Chair Uhrig's July 2, 2024 email, Ms. Duque stated, "It is clear that Jennifer [Zielinski] is withholding information from her board about her role in generating the InvestigateWest article, but I don't see any benefit to us in pointing this out. We don't have proof in writing, but Jenn did admit to contacting the reporter when speaking with Dana, so that was captured in the Zoom recording of [IATC's] recent meeting."

51.     In response to Ms. Duque's email, Director Wiemiller said "Jennifer [Zielinski] is being disingenuous and deflecting any responsibility on several items, leaving the board with an incomplete understanding of the facts." Director Wiemiller then listed a number of reasons why she believed that Ms. Zielinski might have provided information to InvestigateWest that was critical of ICDVVA.

52.     Director Wiemiller also wrote, "the InvestigateWest reporter contacted Elmore [County Domestic Violence Council] to discuss ICDVVA reimbursements. Where did the reporter hear about that? How did they get the ED's cell phone number? Why were they even interested in that in the first place? Again, I suspect the IATC board knows none of this," implying that Ms. Zielinski had provided all of that information to the InvestigateWest reporter and was misleading IATC's board about it. Director Wiemiller further stated that "[o]ur investigation into the COBS complaints has revealed that a number of agencies are frustrated by IATC's actions, citing the lack of collaboration, the disparaging comments about COBS being made to any and all partners, and the efforts to involve elected officials, law enforcement, and now the press in all of this."

53.    In an email thread between Ms. Duque and Director Wiemiller in response to Vice Chair Uhrig's July 2, 2024 email, Ms. Duque wrote, among other things, "I wonder what the JZ fallout will be now," referring to Ms. Zielinski by her initials.  Director Wiemiller responded, "Okay. Who knows what will happen.  I'm tired of thinking about her and IATC."

54.    Director Wiemiller, Chair Somerton, Vice Chair Uhrig, Ms. Duque, and other ICDVVA council members and employers were frustrated and angry with Ms. Zielinski because of their belief that Ms. Zielinski had been disparaging ICDVVA and COBS to InvestigateWest.

55.    On July 15, 2024, the first two InvestigateWest articles about COBS were published.

56.    On July 15, 2024 Stephanie Haley of COBS emailed Director Wiemiller and other ICDVVA employees about the InvestigateWest articles. Director Wiemiller suggested that they meet to discuss in the coming weeks.

57.    On July 17, 2024, Director Wiemiller emailed links to the first two InvestigateWest articles and an "Additional 'Takeaways' Segment" from the articles to Emily Callihan and Sara Stover at the Governor's office. Director Wiemiller informed them that a third InvestigateWest article was expected to be released later in the week, and she stated: "I want to make you aware of the article since it suggests state and local agencies have ignored complaints and violations involving COBS – the trafficking agency I discussed with you when the interview was initially requested."

58.    Director Wiemiller reference to "state and local agencies" in her July 17, 2024 referred to, among others, ICDVVA and Nampa Family Justice Center.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 14

59.     At a July 26, 2024 ICDVVA council meeting, council members discussed issues related to FY25 grant applications that had been submitted by several organizations in response to an ICDVVA Request for Proposal dated Apil 1, 2024.  The minutes stated, among other things:

a.  "Amy [Duque] reviewed the Risk Assessment Summary based on 2023 subrecipient monitoring.   There were 33 low-risk agencies, 10 medium risk agencies, and no high-risk agencies.  COBS was at the upper limit of medium risk, at a score of 18. One more point would designate them as high risk. Amy shared new items being added to the 2025 Risk Assessment form to better capture relevant data."

b.  "The COBS application was also discussed due to allegations included in recent new (sic) articles. Council members agreed that these are still unsubstantiated claims, and funding may continue unless there are official findings of wrongdoing."

60.     On July 26, 2024, Director Wiemiller emailed Jill Stenger, a Special Agent at U.S. Department of Health and Human Services Office of Inspector General, and attached COBS FY24 subaward agreement, and stated that she "was hoping to get an understanding of the investigation process/potential timeline" and the individual who had referred Director Wiemiller to Special Agent Stegner "thought you might be able to provide an outline of that." Director Wiemiller stated "[a]ny information that may be helpful to the Council as we evaluate our funding relationship with COBS would be appreciated."

61.     Based on information and belief, Director Wiemiller and Special Agent Stenger followed up on Director Wiemiller's email in a phone call.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 15

62.     On July 29, 2024, Ms. Duque from ICDVVA emailed Ms. Barthelmess and Stephanie Haley from COBS to set up a 60-90 minute meeting between ICDVVA and COBS, and said, among other things:

> We would like to set up a meeting for this week if at all possible, preferably in person. You are welcome to come to our office, or we could come to yours. We would like to discuss the recent article, the ways in which your organization has been affected, and any action items that we may need to plan for the future. We would like to keep in close contact as this develops, and in-person communication is always the best option if we can make it work. I have copied Dr. Jenn Beazer, who is our Region 4 council member. (Jenn, if you are available, we would love to have you join us for this conversation.) You are welcome to invite the chair of your board to be part of the discussion as well. Dana and I will both be away next week at a VOCA conference and then on vacation the following week, so this week would be ideal.

63.     On July 30, 2024, ICDVVA employees and council members and COBS employees and board members held that meeting. Based on information and belief, ICDVVA and COBS discussed the information that Director Wiemiller received in her phone call with Special Agent Stenger, and Ms. Zielinski and IATC's role in the InvestigateWest articles in the July 30, 2024 meeting.

64.     In response to a July 31, 2024 email from Director Wiemiller expressing apprehension about sending out COBS FY25 grant award letter in light of the negative publicity that was unfolding, ICDVVA employee Kristina Larkin responded, "What are we waiting on? What I heard about the council meeting was that they voted to approve them and that we didn't have any further action to take. Are we holding off on IATC as well?"

65.     Ms. Larkin was implying that if ICDVVA was reconsidering COBS' FY25 grant because of the allegations set forth in the InvestigateWest articles, ICDVVA should also reconsider IATC's FY25 grant for providing information that was used in the InvestigateWest articles.

66.     On July 31, 2024, Cynthania Clark, the Executive Director of Elmore County Domestic Violence Council ("ECDVC") emailed ECDVC employees and board members, stating, among other things, "I just received a call from an Audrey from Investigative West department

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 16

(sic)" and informing her employees of the possibility that the media may contact them, as well, and telling them to refer any media inquiries to the ECDVC board president or Ms. Clark. Ms. Clark stated that she was asked questions about COBS, and whether she was aware of any concerns regarding ICDVVA. Ms. Clark warned her employees, "[p]lease be mindful that ICDVVA is a partner funder and a State agency, we do not engage in conversations, unless it's positive, regarding any of our funders and considering how helpful and resourceful they have been to us, we should remain thankful and grateful!"

67.    Ms. Clark forwarded the email in the preceding paragraph to Director Wiemiller, who responded by writing, among other things, "I'm sorry the reporters are still trying to drag you into this story – such a pain for everyone" and that she appreciated Ms. Clark's "kind words about our team" and "[i]t's been rough seeing our agency's integrity and competence questioned in print."

68.    On July 31, 2024, InvestigateWest published a fourth article that asserted additional allegations against COBS provided by additional witnesses, and reported that the U.S. Department of Health and Human Services Office of Inspector General was conducting a probe into COBS and they had contacted the Idaho Attorney General's office.

69.    On July 31, 2024, Director Wiemiller sent a link with the latest InvestigateWest article to the ICDVVA council members, which, among other things, stated "[a]nother article on COBS was published today" and "[i]t appears the reporters are still attempting to smear our agency which is unfortunate and concerning."

70.    On July 31, 2024, Director Wiemiller sent an email to Jeannie Strohmeyer, Executive Director of the Nampa Family Justice Center ("NFJC")—the other organization that administers COBS' federal funding—and included a copy of the July 31, 2024 InvestigateWest

article. Director Wiemiller stated, "[n]ot sure if you've seen this already, but another article on COBS was published today" and "I'm also aware of the reporter asking another agency if they've heard of any concerns expressed about ICDVVA and/or if they have any concerns with ICDVVA. Heavy sigh!"

71.    The InvestigateWest article published on July 31st made no mention of ICDVVA or any of its employees, and it did not attribute any information to Ms. Zielinski or otherwise mention her.

72.    On August 1, 2024, ICDVVA Chair Somerton emailed Director Wiemiller referencing the July 31, 2024 InvestigateWest article, stating that "[t]he article does a lot of patting themselves on their own backs" and "I continue to be disappointed in the reporter's attempt to dig up dirt on ICDVVA. If she has legitimate questions she should our directo (sic), not persons outside our agency. It is disingenuous to listen to the rantings of one person and not provide us with the specifics of the rantings or the name of the complaining person." Director Wiemiller responded: "Yes – we are aware of yesterday's article. I'm available any time this afternoon."

73.    Chair Somerton's use of the phrase "the rantings of one person" pertained to his belief that Ms. Zielinski had been providing negative information to InvestigateWest about ICDVVA.

74.    On August 1, 2024, Stephanie Haley from COBS emailed ICDVVA council members and employees, including Director Wiemiller, and said, "[w]e appreciate meeting with you all on Tuesday and are grateful for your time and resources. Thanking (sic) you for hearing our perspective and recognizing the disruption of these articles, You are likely aware another InvestigateWest article was released yesterday. Would you be available for a 15 minute call today or tomorrow to discuss? Thank you!!"

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 18

75.    An ICDVVA employee set up a Zoom meeting on August 1, 2024 at 2:00 p.m., and titled it "Article Chat," and invited Director Wiemiller, Ms. Duque, and Ms. Beazer, and Paula Barthelmess, Stephanie Haley, and Josh Bishop from COBS.

76.    ICDVVA employees and council members held meetings and communicated with COBS representatives to, among other things, develop a strategy to address the InvestigateWest allegations and any investigations or inquiries that resulted.

77.    In an August 1, 2024 email from Director Wiemiller to HHS Special Agent Stenger, Director Wiemiller included a link to the July 31st InvestigateWest article, and she stated, among other things, that it was her "understanding that it was too early in the process to classify OIG activities as an 'investigation'" and conveyed to her that ICDVVA had "found inconsistencies in the ongoing reporting of this story, so I wanted to follow up with you on this latest installment as the investigation status has implications in our funding decisions."

78.    Based on information and belief, Director Wiemiller was aware of no substantive "inconsistencies in the ongoing reporting" by InvestigateWest when she emailed Special Agent Stenger and Director Wiemiller was attempting to influence Special Agent Stegner to believe that the InvestigateWest articles were not trustworthy.

79.    On August 2, 2024, Director Wiemiller emailed the four InvestigateWest articles to Jalila Sebbata, Grants Management Specialist for the Office of Victims of Crime for the U.S. Department of Justice. In referencing an earlier call with Ms. Sebbata, Director Wiemiller stated, "[a]s we mentioned, we noticed incorrect information in the articles and we've heard the same from other agencies that were interviewed for the article. We've also been told by COBS that some of their community partners were interviewed and provided positive information to the reporters and none of that information was included."

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 19

80.     Based on information and belief, Director Wiemiller had not identified any substantively "incorrect information in the articles" when she emailed Jalila Sebbata, and Director Wiemiller was attempting to influence Ms. Sebbata to believe that the InvestigateWest articles were not trustworthy.

81.     On August 7, 2024, Director Wiemiller sent IATC a letter announcing that based on IATC's application for a fiscal year 2025 ("FY25") grant, and ICDVVA's determination of IATC's application score, ICDVVA had awarded a grant to IATC's in the amount of $231,305 for FY25—from October 1, 2024 through September 30, 2025.

82.     On August 8, 2024, Mr. Criscione of InvestigateWest filed another public records request with ICDVVA. Specifically, Mr. Criscione requested "*Emails and text messages from April 23, 2024, to or from Dana Wiemiller until present day that contain these keywords: 'COBS' 'Paula' 'InvestigateWest' 'Investigate West' or links with the domain'*." (emphasis in original).

83.     As a result of Mr. Criscione's public records request specifically requesting Director Wiemiller's emails containing the words COBS, Paula [Barthelmess], and InvestigateWest, Director Wiemiller understood that InvestigateWest's investigation, and any subsequent reporting, would be focused on Director Wiemiller and ICDVVA.

84.     On September 5, 2024, Director Wiemiller responded to Mr. Criscione's public record request by, among other things, providing a link to a shared drive containing the requested information. The correspondence provided, among other things, detailed significant frustration by ICDVVA employees and council members regarding InvestigateWest's articles and their belief that Ms. Zielinski had been providing disparaging information to InvestigateWest about ICDVVA and COBS. The correspondence provided also established that ICDVVA was regularly

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 20

communicating and meeting with COBS employees and board members to discuss the allegations against COBS.

85.     On September 5, 2024, Mr. Criscione responded to Director Wiemiller stating, with regards to the InvestigateWest articles, "…if there is any basis leading you to believe that we wrote something inaccurate, I'd appreciate if you would let us know directly.  We will correct any error we made. Since the entire series has been published, not one person—including anyone from COBS or ACTS—has come to us with a single request for a correction. Agencies who have worked with COBS or continue to have said the entire series is false, but won't give us any specific examples."

86.     On September 6, 2024, ICDVVA held a "Special Meeting" where they had two action Items listed: (1) Action Item: Community Outreach Behavioral Health Services Status/Next Steps, and (2) Action Item: Idaho Anti-Trafficking Coalition Status/Next Steps.

87.     Under the action item related to COBS, ICDVVA staff discussed the July 31, 2024 InvestigateWest article alleging the federal investigation of COBS pertaining to potential Medicaid fraud, they discussed COBS' FY25 grant award, and they discussed information provided by COBS related to the allegations, among other things.

88.     Under the action item related to IATC, the meeting minutes state that "ICDVVA staff members presented historical details of complaints against COBS submitted by IATC, reimbursement issues, collaboration issues, and issues related to rumors circulated among other funded programs.  There was extensive discussion about the importance of collaboration in this work, and the disruption and impact to clients, service provision, and community collaboration as a result of the ongoing issues between the two anti-trafficking programs."

89.     At the September 6, 2024 special meeting, Director Wiemiller alleged that Ms.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 21

Zielinski had accused Director Wiemiller of being "involved in a coverup along with Nampa Family Justice Center in all of this COBS stuff" and there's "all this corruption that's been identified that the IATC director says that she has seen the documents or emails that InvestigateWest has received."

90.    At the September 6, 2024 special meeting, Director Wiemiller explained that agencies that are funded by ICDVVA do not automatically lose funding because they have "an open corrective action plan" with ICDVVA by stating: "There was also a mention that COBS has an open corrective action plan and we would still be funding them. That's true of any number of agencies. When we monitor them, depending on when we monitor them, and whether or not there are findings and concerns, there are going to be open action items when we are making funding decisions. That isn't the foundation or a basis for which we would say 'we're not funding,' you know."

91.    At the September 6, 2024 special meeting, Director Wiemiller described the relationship between IATC and COBS by stating, "it's been ongoing and it's been going for five years and its really escalated over the last year, and in particular over the last several months with the introduction of reporters into all of this"—referencing the InvestigateWest reporters.

92.    At the September 6, 2024 special meeting, Director Wiemiller stated that she had recently spoken with "our VOCA administrator" and that the VOCA administrator implied that ICDVVA could punish IATC for their complaints against COBS and for providing information to the InvestigateWest reporter about COBS, Nampa Family Justice Center, and ICDVVA and "[t]here's no reason why we can't tell an agency that the disruption is causing harm to victim services."

93.    At the September 6, 2024 special meeting, Director Wiemiller, in referencing the

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 22

funding of COBS and IATC, stated "I put both of these items on the agenda because they're connected. And, so I think it's important if we're having a conversation about funding for the one agency based on all of these, you know, the articles and allegations, that it's, you know, on the flipside we need to have a conversation about the other agency and, again, what we have observed, the information we have received, what our own direct experience has been, again, to have a conversation about this and for the council to, you know, consider how we go forward."

94. Director Wiemiller was stating that ICDVVA could revoke IATC's FY25 grant based on Ms. Zielinski's communications with the InvestigateWest reporter and for reporting allegations of misconduct by COBS.

95. No action was taken, and the funding of IATC and COBS was tabled and placed on the agenda for the September 20, 2024 ICDVVA meeting.

96. Based on information and belief, the special meeting was called on September 6, 2024 as a result of InvestigateWest's public records request specifically targeting ICDVVA communications pertaining to COBS and the expected fallout from subsequent articles about ICDVVA, and for the purpose of punishing IATC by revoking its FY25 grant because of Ms. Zielinski's role in providing information to InvestigateWest reporters pertaining to COBS, Nampa Family Justice Center, and ICDVVA.

97. On September 19, 2024, Nampa Family Justice Center Executive Director, Jeannie Strohmeyer, filed a complaint against IATC to ICDVVA and alleged "two specific concerns" against IATC: (1) "Refusal to collaborate," and (2) "Alarming advice given to a mutual client." The allegations regarding the "Refusal to collaborate" involved IATC's alleged refusal to engage in a training opportunity with Nampa Family Justice Center in 2022, IATC's alleged refusal to participate in a anti-trafficking task force in 2023, and for "disparaging remarks against Paula

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 23

Barthelmess and COBS." The Nampa Family Justice Center letter stated that IATC's alleged conduct "has caused confusion, disruption and distraction from the work to focus on victim services." Nampa Family Justice Center's "alarming advice to a mutual client" allegation involved another organization—Pathways—which IATC was partnered with, it alleged statements made by an unidentified individual from December of 2023 without specifying which organization they were employed with, and NFJC did not identify any policy, law, or standard that was allegedly violated.

98.    Nampa Family Justice Center's Complaint to ICDVVA against IATC was the first formal complaint ICDVVA had received pertaining to IATC.

99.    The day after receiving Nampa Family Justice Center's complaint, on September 20, 2024, at an ICDVVA council meeting, ICDVVA voted to revoke IATC's FY25 grant it had previously awarded to IATC.

100.    On September 24, 2024, Ms. Barthelmess of COBS filed a complaint against IATC to ICDVVA and set forth a substantial number of allegations against IATC and Ms. Zielinski, including, among others, "Refusal to Collaborate" and harassing conduct. Ms. Barthelmess wrote "Jennifer Zielinski and IATC's ongoing campaign of slander and defamation, now coordinated with assistance from InvestigateWest, has caused significant disruption to Idaho COBS" and it has "impacted the stability of our safe houses, hindered our fundraising efforts, damages our public image, and interfered with the services we provide to victims."

101.    On September 25, 2024, IATC received a letter from ICDVVA Director Wiemiller that stated that "[a]fter re-evaluating IATC's performance under the terms of their ICDVVA subaward agreement, the Council voted at their September 20, 2024, meeting not to renew the IATC grant award for FY25."  Director Wiemiller stated that federal regulations give ICDVVA

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 24

"*sole discretion to determine which organizations will receive funds, and in what amounts*." (emphasis in original). Director Wiemiller stated that "[t]he Council expressed significant concerns about IATC's refusal to collaborate with a variety of community partners, the resulting disruption to victim services, and the inadequate management/administration of grant funds."

102.    Director Wiemiller's reference to IATC's "refusal to collaborate with a variety of community partners" referenced the language used in the complaints from Nampa Family Justice Center and COBS, and specifically related to complaints that Ms. Zielinski and IATC had made against COBS and Nampa Family Justice Center, and for providing information about COBS, Nampa Family Justice Center, and ICDVVA that was used in the InvestigateWest articles.

103.    ICDVVA did not send the complaints from Nampa Family Justice Center or COBS to IATC until October 8, 2024.

104.    Based on information and belief, ICDVVA representatives had contacted Nampa Family Justice Center and COBS to solicit their complaints against IATC for the purpose of trying to justify ICDVVA's decision to revoke IATC's FY25 grant.

105.    ICDVVA has never put IATC on a "corrective action plan" pertaining to any of the allegations contained in the complaints submitted by Nampa Family Justice Center, COBS, or cited in Director Wiemiller's September 25, 2024 letter to IATC.

106.    IATC was provided no notice or hearing prior to its FY25 grant being retroactively revoked by ICDVVA.

107.    Director Wiemiller made no mention of how ICDVVA's application scoring process factored into its decision to revoke IATC's FY25, nor did it mention whether or how IATC's application score of 38.25, conveyed to IATC in ICDVVA's August 7, 2024 letter notifying IATC of its FY25 grant award, was considered when revoking IATC's FY25 grant.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 25

108.     Organizations whose applications received a less favorable score than IATC from ICDVVA did not have their FY25 grant revoked.

## CAUSE OF ACTION

### FIRST CLAIM FOR RELIEF
FIRST AMENDMENT RETALIATION
(42 U.S.C. § 1983 – U.S. Const. Amend. I)
[IATC and Ms. Zielinski]
[Against Somerton, Uhrig, Wiemiller, Moe, Beazer, Kaschmitter, Jacobson, Lemieux, Does I-X
in their Individual Capacities]

109.     Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as if fully set forth herein.

110.     ICDVVA Chair Somerton, Vice Chair Uhrig, Director Wiemiller, Amber Moe, Jennifer Beazer, Rachel Kaschmitter, Jona Jacobson, and Clint Lemieux, and Does I-X are persons as that term is used under 42 U.S.C. § 1983.

111.     Chair Somerton, Vice Chair Uhrig, Director Wiemiller, Amber Moe, Jennifer Beazer, Rachel Kaschmitter, Jona Jacobson, and Clint Lemieux, in their individual capacity and as the final decision-making authority on behalf of ICDVVA, were acting under the color of law when they determined to retroactively revoke IATCs' FY25 grant at the September 20, 2024 ICDVVA meeting, as set forth above.

112.     Does I-X, in their individual capacity, were acting under the color of law when engaging in the actions that resulted in ICDVVA's determination to revoke IATC's FY25 grant, as set forth above.

113.     The acts described above by Chair Somerton, Vice Chair Uhrig, Director Wiemiller, Amber Moe, Jennifer Beazer, Rachel Kaschmitter, Jona Jacobson, and Clint Lemieux, and Does I-X, deprived Plaintiffs of the right to be free from retaliation for exercising their First Amendment rights under the United States Constitution.

114.    IATC's Executive Director, Ms. Zielinski, engaged in a constitutionally protected activity of communicating information about violations of federal funding requirements by Idaho organizations, the outcome of IATC's complaints to ICDVVA pertaining to survivor safety issues and conflicts of interests relating to COBS and its executive director, the outcome of IATC's complaints related to representatives from Nampa Family Justice Center and COBS who publicly disclosed confidential, personal information about individual trafficking victims, and Ms. Zielinski's assessment of changes to Idaho's anti-trafficking laws, among other things.

115.    Ms. Zielinski and IATC engaged in a constitutionally protected activity of making complaints to ICDVVA and the Idaho Attorney General's office for the reasons set forth in the preceding paragraph.

116.    Revoking IATC's FY25 grant because of IATC's complaints and reports to ICDVVA and the Idaho Attorney General's office about COBS and Nampa Family Justice Center, and for Ms. Zielinski's communications to the InvestigateWest reporter, would chill a person of ordinary firmness from continuing to engage in the constitutionally protected activity.

117.    IATC and Ms. Zielinski's act of filing complaints and reports with ICDVVA and the Idaho Attorney General's office, and Ms. Zielinski's act of providing information to an InvestigateWest reporter, was a substantial or motivating factor in Defendants' decision to punish IATC by revoking its' FY25 grant.

118.    IATC's FY25 grant was a valuable government benefit.

119.    Plaintiffs have suffered and will continue to suffer damages as a direct and proximate result of the Defendants' acts, omissions, and deliberate indifference to IATC's rights.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 27

120.    Additionally, due to the wanton and outrageous conduct of Defendants, and each of them, Plaintiffs ask that punitive damages be imposed against Defendants in amounts to be determined by the enlightened conscience of the jury.

## SECOND CLAIM FOR RELIEF
VIOLATION OF DUE PROCESS CLAUSE
(42 U.S.C. § 1983 – U.S. Const. Amend. XIV)
[IATC]
[Against Somerton, Uhrig, Wiemiller, Moe, Beazer, Kaschmitter, Jacobson, Lemieux, Does I-X]

121.    IATC hereby incorporates and re-alleges all previous paragraphs of this Complaint as if fully set forth herein.

122.    ICDVVA Chair Somerton, Vice Chair Uhrig, Director Wiemiller, Amber Moe, Jennifer Beazer, Rachel Kaschmitter, Jona Jacobson, and Clint Lemieux, and Does I-X are persons as that term is used under 42 U.S.C. § 1983.

123.    Chair Somerton, Vice Chair Uhrig, Director Wiemiller, Amber Moe, Jennifer Beazer, Rachel Kaschmitter, Jona Jacobson, and Clint Lemieux, in their individual capacity and as the final decision-making authority on behalf of ICDVVA, were acting under the color of law when they determined to retroactively revoke IATCs' FY25 grant at the September 20, 2024 ICDVVA meeting, as set forth above.

124.    Does I-X, in their individual capacity, were acting under the color of law when engaging in the actions that resulted in Defendants' determination to revoke IATC's FY25 grant, as set forth above.

125.    ICDVVA's award of IATC's FY25 grant conferred to IATC a property interest in the FY25 grant, which is protected under the procedural due process provisions of the Fourteenth Amendment of the United States Constitution.

126.    IATC's procedural due process rights are enforceable under 42 U.S.C. § 1983.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 28

127.    As a matter of procedural due process, IATC was entitled to, among other things, a notice and a hearing prior to having its FY25 grant revoked.

128.    Defendants failed to provide IATC with, among other things, a notice or a hearing prior to revoking IATC's FY25 grant.

129.    As a matter of procedural due process, IATC is also entitled to a fair process before it can be deprived of its FY25 grant.

130.    IATC was entitled to a decision regarding its FY25 grant that was not arbitrary and capricious.

131.    For the reasons set forth above, including but not limited to Defendants' failure to use ICDVVA's scoring system and other criteria in deciding to revoke IATC's FY25 grant, Defendants acted arbitrarily and capriciously when revoking IATC's FY25 grant.

132.    IATC has suffered and will continue to suffer damages as a direct and proximate result of the Defendants' acts, omissions, and deliberate indifference to IATC's rights.

133.    Additionally, due to the wanton and outrageous conduct of Defendants, and each of them, IATC asks that punitive damages be imposed against Defendants in amounts to be determined by the enlightened conscience of the jury.

### THIRD CLAIM FOR RELIEF
FIRST AMENDMENT RETALIATION
(42 U.S.C. § 1983 – U.S. Const. Amend. I)
[IATC and Ms. Zielinski]
[Against Somerton, Uhrig, Wiemiller, Moe, Beazer, Kaschmitter, Jacobson, Lemieux, Does I-X
in their Official Capacities]

134.    Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as if fully set forth herein.

135.    Chair Somerton, Vice Chair Uhrig, Director Wiemiller, Amber Moe, Jennifer Beazer, Rachel Kaschmitter, Jona Jacobson, and Clint Lemieux, in their official capacities,

retroactively revoked IATCs' FY25 grant at the September 20, 2024 ICDVVA meeting, as set forth above.

136. Does I-X, in their official capacities, made decisions that resulted in Defendants' determination to revoke IATC's FY25 grant, as set forth above.

137. The acts described above by Chair Somerton, Vice Chair Uhrig, Director Wiemiller, Amber Moe, Jennifer Beazer, Rachel Kaschmitter, Jona Jacobson, and Clint Lemieux, and Does I-X, deprived Plaintiffs of the right to be free from retaliation for exercising their First Amendment rights under the United States Constitution.

138. IATC's Executive Director, Ms. Zielinski, engaged in a constitutionally protected activity of communicating information about violations of federal funding requirements by Idaho organizations, the outcome of IATC's complaints to ICDVVA pertaining to survivor safety issues and conflicts of interests relating to COBS and its executive director, the outcome of IATC's complaints related to representatives from Nampa Family Justice Center and COBS who publicly disclosed confidential information about individual trafficking victims, and Ms. Zielinski's assessment of changes to Idaho's anti-trafficking laws, among other things.

139. Ms. Zielinski and IATC engaged in a constitutionally protected activity of making complaints to ICDVVA and the Idaho Attorney General's office for the reasons set forth in the preceding paragraph.

140. Revoking IATC's FY25 grant because of IATC's complaints and reports to ICDVVA and the Idaho Attorney General's office about COBS and Nampa Family Justice Center, and for Ms. Zielinski's communications to the InvestigateWest reporter, would chill a person of ordinary firmness from continuing to engage in the constitutionally protected activity.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 30

141.    IATC's act of filing complaints and reports with ICDVVA and the Idaho Attorney General's office, and Ms. Zielinski's act of providing information to an InvestigateWest reporter, was a substantial or motivating factor in Defendants' decision to punish IATC by revoking its' FY25 grant.

142.    IATC's FY25 grant was a valuable government benefit.

143.    Defendants have adopted and continue to maintain an interpretation of regulations and policies that has caused and will continue to cause Defendants to make funding decisions in a manner that violates the Plaintiffs' First Amendment rights, including but not limited to Defendants' interpretation that 28 CFR § 94.103(a) gives them the authority to make funding decisions without any limitations.

144.    Defendants' unconstitutional interpretation of regulations and policies constitutes an ongoing violation of the First Amendment rights of organizations and their employees, including IATC and Ms. Zielinski, who will apply for future grants administered by ICDVVA and who will be subjected to Defendants' unconstitutional interpretation of state and federal regulations and policies.

145.    IATC's FY25 grant permitted IATC to seek reimbursement of certain expenses from ICDVVA on a rolling basis between October 1, 2024 and September 30, 2025, and, accordingly, Defendants' revocation of IATC's FY25 grant and Defendants' refusal to reinstate IATC's FY25 grant constitute an ongoing violation of IATC's First Amendment rights through September 30, 2025.

146.    The relief Plaintiffs seek against Defendants in their official capacities is limited to prospective injunctive and/or declaratory relief, as follows:

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 31

a. An order reinstating IATC's FY25 grant from the date of any such order through September 30, 2025, and requiring Defendants to administer the federal funding that makes up the FY25 to IATC as required by the applicable regulations and policies.

b. An order prohibiting Defendants from continuing to interpret regulations and policies, including but not limited to 28 CFR § 94.103(a), in the future in contravention to the First Amendment rights of organizations who are funded or seeking funding administered by ICDVVA, including IATC.

**FOURTH CLAIM FOR RELIEF**
VIOLATION OF DUE PROCESS CLAUSE
(42 U.S.C. § 1983 – U.S. Const. Amend. XIV)
[IATC]
[Against Somerton, Uhrig, Wiemiller, Moe, Beazer, Kaschmitter, Jacobson, Lemieux, Does I-X
in their Official Capacities]

147. IATC hereby incorporates and re-alleges all previous paragraphs of this Complaint as if fully set forth herein.

148. Chair Somerton, Vice Chair Uhrig, Director Wiemiller, Amber Moe, Jennifer Beazer, Rachel Kaschmitter, Jona Jacobson, and Clint Lemieux, in their official capacities, retroactively revoked IATCs' FY25 grant at the September 20, 2024 ICDVVA meeting, as set forth above.

149. Does I-X, in their official capacities, made decisions that resulted in ICDVVA's determination to revoke IATC's FY25 grant, as set forth above.

150. The acts described above by Chair Somerton, Vice Chair Uhrig, Director Wiemiller, Amber Moe, Jennifer Beazer, Rachel Kaschmitter, Jona Jacobson, and Clint Lemieux, and Does I-X, deprived IATC of its right to due process under the Fourteenth Amendment of the United States Constitution.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 32

151. ICDVVA's award of IATC's FY25 grant conferred to IATC a property interest in the FY25 grant, which is protected under the procedural due process provisions of the Fourteenth Amendment of the United States Constitution.

152. IATC's procedural due process rights are enforceable under 42 U.S.C. § 1983.

153. As a matter of procedural due process, IATC was entitled to, among other things, a notice and a hearing prior to having its FY25 grant revoked.

154. Defendants failed to provide IATC with, among other things, a notice or a hearing prior to revoking IATC's FY25 grant.

155. As a matter of procedural due process, IATC is also entitled to a fair process before it can be deprived of its FY25 grant.

156. IATC was entitled to a decision regarding its FY25 grant that was not arbitrary and capricious.

157. For the reasons set forth above, including but not limited to Defendants' failure to use ICDVVA's scoring system and other criteria in deciding to revoke IATC's FY25 grant, Defendants acted arbitrarily and capriciously when revoking IATC's FY25 grant.

158. Defendants have adopted and continue to maintain an interpretation of regulations and policies that has caused and will continue to cause Defendants to make funding decisions in a manner that violates the Plaintiff's Fourteenth Amendment due process rights, including but not limited to Defendants' interpretation that 28 CFR § 94.103(a) gives them the authority to make funding decisions without any limitations.

159. Defendants' unconstitutional interpretation of regulations and policies constitutes an ongoing violation of the Fourteenth Amendment rights of organizations, including IATC, who

might apply for future grants administered by ICDVVA and who will be subjected to Defendants' unconstitutional interpretation of state and federal regulations and policies.

160.    IATC's FY25 grant permitted IATC to seek reimbursement of certain expenses from ICDVVA on a rolling basis between October 1, 2024 and September 30, 2025, and, accordingly, Defendants' revocation of IATC's FY25 grant in violation of IATC's First Amendment rights and Defendants' refusal to reinstate IATC's FY25 grant constitute an ongoing violation of IATC's Fourteenth Amendment due process rights through September 30, 2025.

161.    The relief IATC seeks against Defendants in their official capacities is limited to prospective injunctive and/or declaratory relief, as follows:

a. An order reinstating IATC's FY25 grant from the date of any such order through September 30, 2025, and requiring Defendants to administer the federal funding that makes up the FY25 to IATC as required by the applicable regulations and policies.

b. An order prohibiting Defendants from continuing to interpret regulations and policies, including but not limited to 28 CFR § 94.103(a), in the future in contravention to the First Amendment rights of organizations who are funded or seeking funding administered by ICDVVA, including IATC.

## **COSTS AND ATTORNEY FEES**

Plaintiffs' claims arise from violations of 42 U.S.C. § 1983.  As an action to enforce this provision and vindicate a violation of civil rights, Plaintiff is entitled to an award of reasonable costs of suit and attorney fees in an amount deemed reasonable by this Court pursuant to 42 U.S.C. § 1988 in the event she is the prevailing party.

## **DEMAND FOR JURY TRIAL**

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 34

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues properly tried by a jury in the above-entitled matter.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

a.      Monetary damages to fairly and reasonably compensate Plaintiffs against Defendants in their individual capacities for the deprivation of its rights, including compensatory (including for recovery of related expenses, emotional distress, and reputational harm), consequential, and presumed damages;

b.      That punitive damages be imposed against Defendants in their individual capacities according to proof;

c.      For costs of suit, including reasonable attorneys' fees;

d.      A declaration that Defendants, in their individual and/or official capacities, violated Plaintiffs' constitutional rights;

e.      An injunction ordering Defendants, in their individual and/or official capacities, to reinstate IATC's FY25 grant; and

f.      For such other and further relief as this Court deems just and equitable.

DATED this 13th day of August, 2025.

FISHER & HUDSON, PLLC

/s/ Jeremiah M. Hudson
Jeremiah M. Hudson – Of the Firm
*Attorney for Plaintiff*

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 35

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 13th day of August, 2025, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic

Filing to the following persons:

RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and Constitutional
Defense

DAVID J. MYERS, ISB #6528
MATTHEW L. MAURER, ISB #12575
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
james.craig@ag.idaho.gov
david.myers@ag.idaho.gov
matthew.maurer@ag.idaho.gov

*Attorneys for Defendants*

/s/ *Jeremiah M. Hudson*
Jeremiah M. Hudson

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 36