RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

DAVID J. MYERS, ISB #6528
MATTHEW L. MAURER, ISB# 12575
Deputy Attorneys General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
david.myers@ag.idaho.gov
matthew.maurer@ag.idaho.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO ANTI-TRAFFICKING COALITION, *et al.*,<br><br>                    *Plaintiffs*,<br><br>        v.<br><br>IDAHO COUNCIL ON DOMESTIC VIOLENCE AND VICTIM ASSISTANCE, *et al.*,<br><br>                    *Defendants.* | Case No. 1:24-cv-00526-REP<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEY'S FEES** |

**INTRODUCTION**

Defendants are the prevailing parties on all claims—demonstrated by the final judgment on Plaintiffs' sole remaining claim (Claim 1, First Amendment retaliation), Dkts. 72-73, after a series of orders dismissing Plaintiffs' other claims. Dkt. 34 (dismissing ICDVVA and official capacity claims due to sovereign immunity); Dkt. 41 (denying preliminary injunction due to *Ex parte Young* and dismissing procedural due process claim, Claim 2, with leave to amend); Dkt. 42 (dismissing Claim 2 with prejudice after amendment). Plaintiffs' action was "unreasonable, frivolous, meritless or vexatious," and Defendants are therefore entitled to recover their reasonable attorney's fees under 42 U.S.C. § 1988(b). *Edgerly v. City & County of San Francisco*, 599 F.3d 946, 962 (9th Cir. 2010).

Accordingly, Defendants request their reasonable attorney's fees under Fed. R. Civ. P. 54(d)(2) and 42 U.S.C. § 1988(b) in the amount of $217,192.25.

**PROCEDURAL HISTORY**

**Complaint, motion for preliminary injunction, and motion to dismiss**

IATC's original Complaint, Dkt. 1 (October 31, 2024), claimed that Defendants had violated 42 U.S.C. § 1983 in two ways: First Amendment retaliation (Claim 1) and a due process violation (Claim 2). Plaintiffs asserted both claims against ICDVVA and the individual Defendants in their official and individual capacities. Dkt. 1 at 1 ("WES SOMERTON, in his official and individual capacity," etc.). IATC also filed a motion for preliminary injunction seeking an order for Defendants to "reinstate the grant that IATC had previously been awarded by ICDVVA for fiscal year 2025 ('FY25 grant')." Dkt. 4 at 1.

After the motion for preliminary injunction was filed and one month before the hearing, Defendants moved to dismiss the Complaint on grounds of Eleventh Amendment immunity,

qualified immunity, and lack of jurisdiction (because neither the state nor its officials in their official capacities are "persons" under § 1983). Dkts. 29, 29-1. On February 10, 2025, the Court granted the motion to dismiss in part. The Court dismissed Defendant ICDVVA because, as an agency of the State, it is immune from IATC's claims on the grounds of sovereign immunity. Dkt. 34 at 3. The Court also held that the same immunity barred IATC's claims for damages against the individual defendants in their official capacities, which IATC had belatedly conceded. *Id.* at 4–5. IATC sought and the Court granted permission to amend its Complaint to make it clear that it was asserting official capacity claims for prospective injunctive relief, to comply with *Ex Parte Young*. *Id.* The Court deferred ruling on whether the amendment would be futile until after the Amended Complaint was filed.

IATC filed its First Amended Complaint on February 14, 2025, now asserting four claims: First Amendment retaliation against the individual defendants in their individual capacities (Claim 1) and in their official capacities (Claim 3), and violation of the Due Process Clause against the individual defendants in their individual capacities (Claim 2) and in their official capacities (Claim 4). Dkt. 37.

The Court held a four-hour preliminary injunction hearing on February 18, 2025. Dkt. 38. IATC presented live testimony from Amy Duque (ICDVVA's Program Administration Manager), IATC Board Chair Angela Lindig, and Defendant Wiemiller (Executive Director of ICDVVA); Defendants presented live testimony from Ms. Duque, Ms. Wiemiller, and ICDVVA Board members (and Defendants) Amber Moe (who had voted in favor of renewing funding for IATC) and Wes Somerton. *Id.* Defendants argued that there was no due process violation because: IATC did not have a property interest in the grant but had received due process anyway; there was no

First Amendment violation because there was no retaliation; and there was no irreparable harm because IATC was claiming only economic loss and not any ongoing harm. Dkt. 22.

Shortly thereafter, the Court granted Defendants' motion to dismiss as to the official capacity First Amendment retaliation claim (Claim 3 of the First Amended Complaint) and denied IATC's motion for a preliminary injunction. Dkt. 41. The Court dismissed Claim 3 because IATC made no showing that any violation was ongoing. *Id.* at 9–11. The Court denied the injunction because IATC did not have a property interest in the FY25 grant and Defendants provided IATC with an opportunity to be heard before terminating its funding. *Id.* at 15–22.

On April 14, 2025, the Court granted more of Defendants' motion to dismiss, dismissing both the official capacity and individual capacity due process claims (Claims 2 and 4) on qualified immunity grounds "because Plaintiff does not have a constitutionally protected property interest in the grant funding it seeks." Dkt. 42 at 20–21. The Court denied the motion to dismiss only as to Claim 1, the individual capacity First Amendment retaliation claim, noting that qualified immunity on the balancing element of the *Pickering* test "can be a challenging standard for a plaintiff to overcome at summary judgment," *id.* at 17, because the Court would not be obligated to "constrain[] its focus to the complaint." *Id.* at 19. The Court took the time to caution Plaintiffs that they should not proceed against any Defendants who did not personally participate in the revocation of the FY25 grant:

> The Court notes, however, that in order to obtain damages against each Defendant, Plaintiff will need to show that that Defendant personally participated in the alleged rights deprivation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Here, the Court has been presented with evidence (that is not in the Amended Complaint) that one of the named Defendants, Amber Moe, voted *against* the revocation of Plaintiff's grant funding. The Court encourages Plaintiff to reassess whether it should be bringing a claim for damages against Defendant Moe in her individual capacity.

*Id.* at 14 n.3 (emphasis in original).

**Discovery and Summary Judgment**

For more than seven months, the parties engaged in significant discovery. IATC propounded 19 interrogatories and 25 requests for production of documents. In response, Defendants produced approximately 1,800 documents consisting of approximately 4,425 pages, but this required attorney review of thousands more documents for responsiveness, requiring many hours of document review. IATC deposed all seven of the individual Defendants (four of them for two sessions each). Defendants deposed Plaintiff Zielinski, her husband (who was Program Manager for IATC and responsible for its finances), and IATC board chair Angela Lindig.

During discovery, IATC amended its Complaint again, adding Ms. Zielinski as an additional Plaintiff, Dkt. 54. Aside from adding Ms. Zielinski as an additional Plaintiff, IATC made no substantive changes in their Second Amended Complaint. Dkt. 72 at 29.

Following the close of discovery, Defendants moved for summary judgment on the First Amendment retaliation cause of action because Plaintiffs could not show a genuine dispute of material fact that they were entitled to relief on the merits of their claim and because Defendants were entitled to qualified immunity in the absence of a clearly established right. Dkt. 62. The Court heard oral argument on the motion.

On July 20, 2026, the Court granted Defendants' motion for summary judgment on qualified immunity grounds, Dkt. 72, and entered judgment in Defendants' favor. Dkt. 73. The Court's summary judgment decision highlighted many serious deficiencies in Plaintiffs' proof of the relevant facts:

- "[R]elying heavily upon Ms. Zielinski's own deposition testimony, the Court finds that Plaintiffs' communications to InvestigateWest were less than the paradigmatic

'legitimate whistleblowing' entitled to the height of First Amendment protections." Dkt. 72 at 15.

- "That Plaintiffs' whistleblowing was directed at COBS's alleged misconduct, and not Defendants' misconduct, makes Plaintiffs' case for retaliation less compelling." *Id.* at 16

- "There is no record evidence that Ms. Zielinski corroborated the allegations before making her complaints to state and federal agencies about COBS . . . . [Quoting Ms. Zielinski's deposition] 'Q. So they could all be false? A. They could be.'" *Id.* at 17 (internal citations omitted).

- "As a basis for her claims that COBS was committing tax fraud by improperly soliciting donations, Ms. Zielinski referenced an online IRS record that showed that COBS tax-exempt status was revoked. However, Ms. Zielinski's reliance was misplaced; COBS's tax-exempt status was auto-revoked, but reinstated the same day, so there was little basis for her claim." *Id.* n.2 (internal citation omitted).

- "Arguably, then, Ms. Zielinski made the allegations of wrongdoing against COBS and Ms. Barthelmess with 'reckless disregard of the truth.'" *Id.* at 17.

- "[T]he 'whistle had already been blown' on COBS and Ms. Barthelmess before the InvestigateWest articles." *Id.* at 18.

- "Whether the agencies failed to act due to their lack of interest or diligence, or the unsubstantiated veracity of the claims, the fact remains that the allegations already had been publicized at the time of the subject free speech. Accordingly, Plaintiffs' free speech to InvestigateWest again falls short of paradigmatic whistleblowing entitled to the highest First Amendment protections." *Id.* at 20.

- "IATC and COBS failed to collaborate. This was in large part because of the personal feud between Ms. Zielinski and Ms. Barthelmess, largely driven by Ms. Zielinski . . . . [W]hen [ICDVVA] offered mediation as a solution, Ms. Zielinski alone declined. Instead, Ms. Zielinski soon after lodged the 41-page formal complaint with ICDVVA. This is telling." *Id.* at 21 (internal citation omitted).

- "That Ms. Zielinski refused mediation suggests that she viewed the dispute as personal and was less interested in resolving it than in total vindication. Should that vindication have occurred, and ICDVVA chosen to discontinue grants to COBS as a result, IATC potentially stood to gain financially as the only other full-service victims' services grantee in the Treasure Valley." *Id.*

- "[T]he Court finds that Plaintiffs' speech caused actual disruption to victim services in the Treasure Valley, and thus, frustrated ICDVVA's mission." *Id.* at 22.

- "[The InvestigateWest] articles created distrust, fear, and uncertainty amongst victims who resided at COBS's safe houses." *Id.*

- "[T]he articles disrupted collaboration between law enforcement and IATC and COBS." *Id.*

- "After the articles were published, law enforcement officers were confused about which organization they could trust." *Id.* at 23.

- "Indeed, Ada County law enforcement was so disillusioned that it refused to work with either IATC or COBS." *Id.*

- "[T]he articles caused other victim services organizations to choose sides between IATC and COBS, further disrupting necessary collaboration in the victim services community." *Id.* at 24.

## LEGAL STANDARDS

### Entitlement to fees

In a civil rights action, 42 U.S.C. § 1988(b) provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Case law provides that a civil rights defendant must not only prevail but must also show that the action was "unreasonable, frivolous, meritless or vexatious." *Edgerly*, 599 F.3d at 962 (cited in *Gammel v. Kuna Rural Fire Protection Dist.*, No. 1:19-cv-00390-REP, 2021 WL 5165675, at *2 (D. Idaho Nov. 5, 2021)).[1]

The single term "frivolous" is often used as shorthand for the four-word standard. *See, e.g.*, *Gammel*, 2021 WL 5165675, at *2 (citing other cases condensing the standard to "frivolous"). Among other times, a case or claim is frivolous (or unreasonable, meritless, or vexations) "when the result is *obvious*." *Gammel*, 2021 WL 5165675, at *2 (emphasis added) (quoting *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003)); *see also Yu v. Idaho State Univ.*, No. 4:15-cv-00430-REB, 2021 WL 1165926, at *1 (D. Idaho Mar. 26, 2021) (same). "An action becomes frivolous when the result appears *obvious* or the arguments are wholly without merit. A defendant can recover if the plaintiff violates this standard at any point during the litigation, not just at its inception." *Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007) (affirming award

---

[1] This standard derives from the Title VII case, *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). *Edgerly*, 599 F.3d at 962. The Court in *Christiansburg* commented that "the term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case, and that the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him." 434 U.S. at 421. The *Christiansburg* "dual standard" has been criticized. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 537–38 (1994) (Thomas, J., concurring) (disagreeing with the "dual standard" interpretation of § 1988 as resting "on the mistaken premise . . . that whether we construe a statute in accordance with its plain meaning depends upon the statute's policy objectives and legislative history . . . . 'Our task is to apply the text, not to improve upon it.'") (citations omitted).

of attorney's fees; "Based on the evidence [plaintiff] acquired during discovery, it was *obvious* that he could not meet his burden of demonstrating that the County's deliberate conduct was the moving force behind the alleged constitutional violation.") (emphasis added).

A prevailing defendant is entitled to attorney's fees "to compensate for the fees he paid in defending against the frivolous" claims, even if not all the claims brought by the plaintiff were frivolous. *Fox v. Vice*, 563 U.S. 826, 835 (2011). "[T[he presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed." *Yu*, 2021 WL 1165926, at *1 (quoting *Fox*, 563 U.S. at 834).

## Calculating reasonable fees

Courts use the two-step "lodestar" method to calculate reasonable attorneys' fee awards— the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, which is generally the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Hanigan v. Opsec Sec., Inc.*, No. 1:22-cv-00064-DCN, 2023 WL 6878762, at *2 (D. Idaho Oct. 18, 2023). The "fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Id.* "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Id.*

Although "the calculation of the amount of a 'reasonable attorney's fee' is not a precise science," *id.* (quoting *Green v. Baca*, 225 F.R.D. 612, 614 (C.D. Cal. 2005)), there is a "strong presumption" that the lodestar figure represents a reasonable fee. *Id.* (quoting *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

## ARGUMENT

### I. Plaintiffs' suit against ICDVVA, its Director, and all Council members was unreasonable, frivolous, meritless, or vexatious—the outcome of the case was obvious.

As the newest tack in a years-long, one-sided personal feud, Plaintiffs pursued their claims against Defendants for almost two years despite knowing from the outset that their claims were precluded by black letter law and by the facts they already knew. The Court is therefore authorized to award a reasonable attorney's fee to Defendants under 42 U.S.C. § 1988(b).

#### A. It was obvious that Plaintiffs' claims against ICDVVA and the individual Defendants in their official capacities would fail.

As a matter of law, it was obvious from the start that the Eleventh Amendment immunized ICDVVA and the individual Defendants in their official capacities from IATC's damages claims. The same was true in *Yu*, where the court dismissed seventeen of the plaintiff's eighteen claims due to Eleventh Amendment immunity. 2021 WL 1165926, at *1. Here, as in *Yu*, "there is nothing in the applicable law that would support a claim that Eleventh Amendment immunity does not attach to the claims that were dismissed by the Court. Under *Karam*, the 'result is obvious' that such claims would be dismissed, given that the claims were raised against a party entitled to Eleventh Amendment immunity." *Id.* at *3; *see* Dkt. 34 at 3–5.

Defendants are therefore entitled to reasonable attorney's fees for defending against these claims.

#### B. It was obvious that Plaintiffs' motion for preliminary injunction would fail.

IATC never had any hope of establishing either of the two elements of its due process claim—a constitutionally protected property interest or denial of adequate procedural protections. Dkt. 41 at 15 (citing *Brewster v. Bd. Of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998)).

On the first element, the FY25 grant obviously was not "mandatory in nature," as required. *Id.* (citing *Gerhart v. Lake Cnty. Mont.*, 637 F.3d 1013, 1019 (9th Cir. 2010)). "The key inquiry is

whether the issuing authority is *required* to award the benefit once an applicant satisfies specific non-discretionary criteria." *Id.* at 16 (citing *Shanks v. Dressel*, 540 F.3d 1082, 1091 (9th Cir. 2008)) (emphasis in original). But it was "undisputed that the VOCA regulations gave ICDVVA significant discretion over grant awards" and the two IDAPA provisions IATC cited clearly did not eliminate its discretion. *Id.* at 16–19. IATC "made a hash of" one of the IDAPA provisions, "and the regulations and program guidelines are *clear* that no particular grant applicant is ever entitled to funding." *Id.* at 19. It was obvious before IATC ever filed suit that "[f]rustration that the government has backed out of a contract before it was finalized, however, does not rise to the level of a property interest." *Id.* at 20.

On the second element, IATC knew that ICDVVA had given it "the opportunity to be heard at a meaningful time and in a meaningful manner," *id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)), by notifying IATC of the funding revocation decision by letter and extending funding for an additional month, giving IATC time to appeal the revocation. *Id.* at 20–21. It was obvious, as the Court held, that IATC "could have made the same arguments it makes here in an appeal to the Council. The fact that Plaintiff did not anticipate prevailing in this appeal or did not believe the Council would be receptive to these arguments does not mean its procedural due process rights were violated." *Id.* at 21–22.

Defendants are therefore entitled to reasonable attorney's fees for defending against the motion for preliminary injunction.

### C.    It was obvious that Plaintiffs' reworked claim for injunctive relief for alleged First Amendment retaliation (Claim 3 of the Amended Complaint) would fail.

In giving IATC the opportunity to amend its complaint to attempt to assert official capacity claims for prospective injunctive relief, the Court essentially walked IATC through what it would have to plausibly allege to comply with *Ex parte Young*. Dkt. 34 at 4–5. Nevertheless, in its

amended complaint, IATC "failed to identify any practice, policy, or procedure associated with its First Amendment retaliation claim." Dkt. 41 at 9. Instead, IATC "rest[ed] entirely on conjecture and conclusory assertions, which the Court is not bound to accept." *Id.* at 11. The Court therefore dismissed Claim 3 after IATC's second failed attempt.

Defendants are therefore entitled to reasonable attorney's fees for defending against the original complaint and the amended complaint on this claim.

### D.    It was obvious that IATC's official and individual capacity due process claims (Claims 2 and 4) would be dismissed on qualified immunity grounds.

Even after the Court denied IATC's motion for preliminary injunction—because it did not have a property interest in the FY25 grant and it had been provided with an opportunity to be heard—IATC continued to press those claims until the Court dismissed them with prejudice on qualified immunity grounds. Dkt. 42 at 20–21.

Defendants are therefore entitled to reasonable attorney's fees for defending against IATC's unfounded due process claims.

### E.    It was obvious that Plaintiffs could not survive summary judgment on their First Amendment retaliation claim.

In their motion to dismiss early in the litigation, Defendants argued that they were entitled to qualified immunity because, even if they were found to have engaged in First Amendment retaliation (which they strenuously and comprehensively denied), IATC had no clearly established right to disrupt victim services while pursuing a personal feud with a rival grant recipient. Dkt. 29-1 at 14–18. Even if Plaintiffs were somehow unaware of the doctrine of qualified immunity before filing suit, they were promptly put on notice. Nevertheless, despite full discovery, Plaintiffs never substantiated anything like a clearly established right to have engaged in their petty and disruptive behavior. Ms. Zielinski's "speech" was old news, not directed primarily at Defendants, intentionally uncorroborated, self-interested, and—most disgracefully—"created distrust, fear,

and uncertainty amongst victims," as well as confusion, distrust, and disillusionment among law enforcement. Dkt. 72 at 15–24. Plaintiffs failed to carry their burden of establishing that the *Pickering* balancing test 'so clearly favored' them. *Id.* at 25 (citing *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 729 (9th Cir. 2022)).

As a result, it was obviously "not 'patently unreasonable' for ICDVVA to conclude that Plaintiffs' speech was not protected by the First Amendment and to react by revoking IATC's FY 2025 grant." *Id.* (citing *Riley's*, 32 F.4th at 729). And Plaintiffs failed to "provide any authority that . . . puts this constitutional question—on these specific facts—'beyond debate.'" *Id.* at 26 (citing *Kisela v. Hughes*, 584 U.S. 100, 103 (2018)). Defendants' were vindicated by the Court's grant of summary judgment on qualified immunity.

Defendants are therefore entitled to reasonable attorney's fees for defending against the First Amendment retaliation claim for the duration of this case.

**F.    It was obvious from the preliminary injunction hearing forward that Plaintiffs should have dismissed their claims against non-participating Council members.**

As of December 24, 2024, at the latest, Plaintiffs knew that only four of the individual Defendants voted on whether to revoke IATC's FY25 grant: Wes Somerton, Amber Moe, Rachel Kaschmitter, and Jona Jacobson. Plaintiffs knew that Defendant Amber Moe had voted *against* the revocation—i.e., in *favor* of IATC. Dkt. 22-25. Plaintiffs also knew that Defendants Jessica Uhrig, Clint Lemieux, and Jennifer Beazer weren't even present at the meeting and therefore played no role in the action. *Id.* Even after the Court itself "*encourage[d]* Plaintiff to reassess whether it should be bringing a claim for damages against Defendant Moe in her individual capacity," Dkt. 42 at 14 n.3, Plaintiffs refused to take the hint and persisted in litigating against four defendants who clearly did not "personal[ly] participate[] in the alleged rights deprivation." *Jones*, 297 F.3d at 934. When challenged on this issue by Defendants' motion for summary

judgment, Plaintiffs stubbornly insisted that Defendants Moe, Uhrig, and Beazer should remain in the case because they had voted to deny IATC's FY26 grant—an action that was never at issue in any of Plaintiffs' claims.[2]

This behavior is consistent with Ms. Zielinski's rabid pursuit of "total vindication" in her personal dispute with COBS and Ms. Barthelmess. Dkt. 72 at 21. It is not consistent, however, with Plaintiffs' obligations not to pursue unreasonable, frivolous, meritless, or vexatious claims.

***

In summary:

> Ms. Zielinski largely relied on anonymous and unverified reports of wrongdoing by COBS and Ms. Barthelmess, did not substantiate them, and admitted that they could be false. The alleged violations were not immediately apparent as criminal or even violative of law. Moreover, the alleged violations were the product of long-standing feud – in which Plaintiffs had a personal and perhaps financial stake in the outcome – that further undermined their veracity.

Dkt. 72 at 27. Significantly, none of the dispositive facts were revealed to Plaintiffs in the course of the litigation. As the Court's thorough recitation makes clear, all these deficiencies in the factual predicate for Plaintiffs claims were always known personally by Plaintiffs from the beginning and throughout the litigation. Plaintiffs' claims were unreasonable, frivolous, meritless, or vexatious. Plaintiffs did not have a "reasonable ground for bringing suit." *Gammel*, 2021 WL 5165675, at *2 (citation omitted).

The Court should therefore award a reasonable attorney's fee to Defendants as the prevailing parties under § 1988(b).

---

[2] Plaintiffs belatedly agreed in their opposition to Defendants' motion for summary judgment "that Clint Lemieux should be dismissed," Dkt. 63 at 10, but they took no steps to effectuate any dismissal.

**II.    Defendants seek a reasonable attorney's fee.**

The award amount Defendants seek is "a reasonable attorney's fee" under § 1988(b). The hourly rates for the two attorneys and two paralegals are comparable to the rates in fee awards in this District for similar work in federal court litigation by attorneys and paralegals of similar experience. Decl. of David J. Myers ¶ 10. The number of hours claimed reflect actual hours spent on this case but omit (i) hours spent by other OAG attorneys whose fees Defendants do not seek to recoup, and (ii) any hours in excess of a reasonable amount for the work performed. *Id.* ¶ 11. Proof of the hours spent and the reasonableness of these fees is set forth—in compliance with Dist. Idaho Loc. Civ. R. 54.2—in the accompanying declaration and attached exhibits. *See* Myers Decl. and Ex. A.

The lodestar amount, including time spent preparing this motion and accompanying materials, was derived as described below.

**FEES REQUESTED**

Defendants' fees and costs, broken down by attorney and paralegal, are as follows:

Matthew M. Maurer – 359.15 hours x $315.00 =    $113,132.25

David J. Myers – 268.9 hours x $335.00 =    $ 94,115.00[3]

Alexis Kovacs (Paralegal) – 42.9 hours x $150.00 = $   6,435.00

Zubair Sohail (Paralegal) – 23.4 hours x $150.00 =  $   3,510.00

Total to date:    $217,192.25

*Id.* ¶¶ 13-15.

---

[3] This amount includes 25.5 hours spent on the motion for attorney's fees and accompanying materials. Defendants request that, before the Court finalizes the amount to be awarded, Defendants be given an opportunity to submit supplemental information for the time spent on the motion by Mr. Maurer and the paralegals.

CONCLUSION

For the foregoing reasons, the Court should grant the award of $217,192.25 in attorney's fees and expenses incurred in representing Defendants pursuant to 42 U.S.C. § 1988 as set forth in the accompanying declaration and exhibits. To the extent the Court determines that the outcome of any claim was not obvious and does not justify an attorney's fees award, the Court should allow Defendants to modify the amount of their fee claim accordingly.

DATED: August 3, 2026

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ David J. Myers
DAVID J. MYERS
Deputy Attorney General

*Attorney for Defendants*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on August 3, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Jeremiah Matthew Hudson
jeremiah@fisherhudson.com

*Attorney for Plaintiff*

/s/ *David J. Myers*
DAVID J. MYERS